BRIAN S. KABATECK, SBN 152054
(bsk@kbklawyers.com)
RICHARD L. KELLNER, SBN 171416
(rlk@kbklawyers.com)
M. MARK YENIKOMSHIAN, SBN 227555
(mmy@kbklawyers.com)
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

KHORRAMI POLLARD & ABIR
SHAWN KHORRAMI, ESQ., SBN 180411
(skhorrami@khorrami.com)
DYLAN POLLARD, ESQ., SBN 180306
(dpollard@khorrami.com)
444 S. Flower St., 33rd Floor
Los Angeles, CA 90071
Telephone: (213) 596-6000
Facsimile: (213) 596-6010

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TORESSA LOCKETTE, an individual; individually and on Behalf of all other similarly situated current and former employees,<br><br>Plaintiff,<br><br>vs.<br><br>ROSS STORES, INC., a Delaware Corporation; ROSS DRESS FOR LESS, INC., A Virginia Corporation; and DOES 1 through 100,<br><br>Defendants. | CASE NO.: CV 03430 MMC<br><br>**DECLARATION OF RICHARD L. KELLNER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE**<br><br><u>Hearing</u><br>Date: Sept. 7, 2007<br>Time: 9:00 a.m.<br>Courtroom: 7<br>Before: Hon. Maxine M. Chesney<br><br>Complaint Filed: June 29, 2007<br>Trial Date: None |

**DECLARATION OF RICHARD L. KELLNER**

# DECLARATION OF RICHARD L. KELLNER

I, Richard L. Kellner, Esq. declare and state as follows:

1. I am an attorney duly licensed to practice law in the State of California and this honorable Court. I am a partner in the law firm of Kabateck Brown Kellner LLP, attorneys of record for Plaintiffs John Alba and Serjik Elysian. This declaration is made in support of Plaintiffs' Opposition to Defendant's Motion to Transfer Venue. I have personal knowledge of the following facts and could and would competently testify thereto if called upon to do so.

2. In a prior wage and hour action that related only to California managers and that was litigated in California entitled *Taylor v. Ross Stores, Inc.*, Superior Court of the State of California, County of San Bernardino (Case No. JCCP 4331) (the "Taylor Action"), Ross sought to enforce the same form arbitration clause as will be applicable to the plaintiffs in this collective action. In that case, the California Superior Court ruled that the matter could go to arbitration, but a class action waiver would be unenforceable under the law governing the Federal Arbitration Act ("FAA"). Further, it is my understanding that Ross apparently withdrew its request for arbitration and the matter proceeded in State Court.

3. In fact, it is my understanding (confirmed by Ross' motion to transfer venue) that Ross entered a settlement agreement in the Taylor Action, in which a class action was certified as to comparable workers in its California stores. (*See* **Exhibit "A,"** a true and correct copy of a February 21, 2007 Order Granting Final Approval to Class Action Settlement in the Taylor Action).

4. Attached hereto as **Exhibit "B"** is a true and correct copy of relevant portions of Defendant Ross Stores' SEC Form 10-K for the fiscal year ending February 3, 2007, showing Ross' store locations. This document was downloaded from the SEC website on August 10, 2007.

1

**DECLARATION OF RICHARD L. KELLNER**

5. Attached hereto as **Exhibit "C"** is a true and correct copy of relevant portions of Defendant Ross Stores' SEC Form 10-K for the fiscal year ending February 3, 2007, showing Ross has an annual revenue of approximately $5.6 billion. This document was downloaded from the SEC website on August 10, 2007.

I declare under penalty of perjury according to the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on August 17, 2007, at Los Angeles, California.

_____
RICHARD L. KELLNER

2

DECLARATION OF RICHARD L. KELLNER

Exhibit A

Mark Yablonovich, Esq. (SBN 186670)
Marc Primo, Esq. (SBN 216796)
Initiative Legal Group LLP
1875 Century Park East, Suite 1800
Los Angeles, California 90067
Telephone: (310) 556-5637
Facsimile: (310) 861-9051

Lead Counsel and Attorneys for Class Members

FILED-West District
San Bernardino County Clerk

FEB 21 2007

BY _____ DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN BERNARDINO

| | |
|---|---|
| LANCE TAYLOR, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ROSS STORES, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | RCV 065453: Joint Cases No. JCCP 4331<br><br>Case: 04CC09348 - Orange County<br><br>[Assigned for all purposes to the Hon. Kenneth Andreen]<br><br>[PROPOSED] ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT, AWARD OF CLASS COUNSEL FEES AND COSTS, AND AWARD OF SERVICE PAYMENT TO CLASS REPRESENTATIVES AND ISSUING FINAL JUDGMENT AND DISMISSING CASE WITH PREJUDICE<br><br>Date: February 21, 2007<br>Time: 8:30 a.m.<br>Dept: R6<br><br>Complaint Filed: September 10, 2004<br><br>RCV 065453 - San Bernardino County<br><br>Complaint Filed: August 6, 2002 |
| SANDRA COLTON, NANCY HOLLOWAY, individually, and as Private Attorney General on behalf of all others similarly situated and Does 1-100<br><br>Plaintiffs,<br><br>vs.<br><br>ROSS DRESS FOR LESS STORES, ALMA | |

ORDER GRANTING FINAL APPROVAL

| | |
|---|---|
| MERCADO and Does 1-100, inclusive,<br><br>    Defendants.<br><br>SEAN FRANCO, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>ROSS STORES, INC., a foreign corporation dba "Ross Dress for Less", Alma Mercado and Does 1-100, inclusive,<br><br>    Defendants. | Case No. BC 298950 - Los Angeles County<br><br>Complaint Filed: July 11, 2003 |

This matter having come before the Court on February 21, 2007 for final approval of the settlement set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement"), an executed copy of which is attached as Exhibit A to the Declaration of Marc Primo In Support of Unopposed Motion For Order Granting Final Approval To Class Action Settlement, Award of Class Counsel Fees And Costs, And Award of Service Payment To Class Representatives, and due and adequate notice having been given to the Class Members, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed of the premises and good cause appearing therefore, it is ORDERED, ADJUDGED AND DECREED THAT:

1. All terms used herein shall have the same meaning as defined in the Settlement Agreement.

2. This Court has jurisdiction over the subject matter of this litigation and over all Parties to this litigation, including all Class Members.

3. Distribution of the Notice directed to the Class Members as set forth in the Settlement Agreement and the other matters set forth therein have been completed in conformity with the Preliminary Approval Order and following Orders, including individual notice to all Class Members who could be identified through reasonable effort, and was the best notice practicable under the circumstances. This Notice provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement, to all persons entitled to such Notice; and the Notice fully satisfied the requirements of due process. No Class Members objected to the Settlement Agreement. Only seven Class Members opted out of the Settlement Agreement. Four hundred and eighty-eight (488) Class Members submitted valid claims.

4. This Court hereby approves the settlement set forth in the Settlement Agreement and finds that the Settlement Agreement is, in all respects, fair, adequate and reasonable and directs the Parties to effectuate the Settlement Agreement according to its terms. The Court finds that the Settlement Agreement has been reached as a result of intensive, serious and non-collusive arms-length negotiations. The Court further finds that the Parties have conducted extensive investigation and research and counsel for the Parties are able to reasonably evaluate their

1 | respective positions. The Court also finds that settlement at this time will avoid additional
2 | substantial costs, as well as avoid the delay and risks that would be presented by the further
3 | prosecution of the Action. The Court has reviewed the monetary recovery being granted as part of
4 | the Settlement Agreement and recognizes the significant value to the Settlement Class. The Court
5 | also finds that the Class is properly certified as a class for settlement purposes only.

6 |     5.    For purposes of this Judgment, the term "Class" means ~~employees of Defendant~~ all
7 | current and former employees employed by Defendant in the position of Assistant Manger at their
8 | business locations within the state of California from May 10, 2000 until November 1, 2006.

9 |     6.    As of the Effective Date, each and every Released Claim of each and every Class
10 | Member is and shall be deemed to be conclusively released as against the Released Parties. All
11 | Class Members as of the Effective Date are hereby forever barred and enjoined from prosecuting
12 | the Released Claims against the Released Parties.

13 |     7.    The Settlement Agreement is not an admission by Defendant or any of the other
14 | Released Parties, nor is this Judgment a finding of the validity of any claims in the Action or of
15 | any wrongdoing by Defendant or any of the other Released Parties. Neither this Judgment, the
16 | Settlement, Agreement nor any document referred to herein, nor any action taken to carry out the
17 | Settlement, may be construed as, or may be used as an admission by or against Defendant or any
18 | of the other Released Parties of any fault, wrongdoing or liability whatsoever. The entering into
19 | or carrying out of the Settlement Agreement, and any negotiations or proceedings related thereto,
20 | shall not in any event be construed as, or deemed to be evidence of, an admission or concession
21 | with regard to the denials or defenses by Defendant or any of the other Released Parties and shall
22 | not be offered in evidence in any action or proceeding against Defendant or any of the Released
23 | Parties in any court, administrative agency or other tribunal for any purpose whatsoever other than
24 | to enforce the provisions of this Judgment, the Settlement Agreement, or any related agreement or
25 | release. Notwithstanding these restrictions, any of the Released Parties may file in the Action or
26 | in any other proceeding the Judgment, Settlement Agreement, or any other papers and records on
27 | file in the Action as evidence of the Settlement Agreement to support a defense of res judicata,
28 |

collateral estoppel, release, or other theory of claim or issue preclusion or similar defense as to the Released Claims.

8. The Court hereby dismisses the Action on the merits and with prejudice against all Class Members in favor of Defendant and without costs or attorneys' fees to any of the Parties as against any other settling party, except as provided for in the Settlement Agreement. Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over the interpretation, implementation and enforcement of the Settlement and all orders and judgments entered in connection therewith.

9. The Court hereby awards Class Counsel attorneys' fees and costs ("Fees Award") in the amount of $1,000,000. The Court finds that the attorneys' fees and costs sought are fair and reasonable and should be paid to Class Counsel. Class Counsel has proceeded on a contingency basis despite the uncertainty of any fee award. Class Counsel risked that they would not obtain any relief on behalf of Plaintiffs or the Class, and so no recovery of fees. In addition, Class Counsel was precluded from pursuing other potential sources of revenue due to their prosecution of the claims in this action. The Court also considers the skill of the Class Counsel in fashioning an appropriate remedy, and the overall results obtained by the litigation, which resulted in the grant of final approval of a settlement that will provide compensation for the alleged unpaid wages due and owing to the class members. Defendant shall pay the Fees Award to Lead Class Counsel who then shall be solely responsible for the distribution of Plaintiffs' attorneys' fees, costs and expenses to the remaining Class Counsel. Payment of the Fees Award to Lead Class Counsel is in full satisfaction of any claim to attorneys' fees or costs in each and all of the coordinated actions governed by this Order and the Settlement Agreement: (1) Taylor v. Ross Stores Inc., Case No. 04CC09348, which was filed in Orange County Superior Court on September 10, 2004; (2) Colton v. Ross Stores, Inc., Case No. RCV 065453, which was filed in San Bernardino Superior Court on August 6, 2002; and, (3) Franco v. Ross Stores, Inc., Case No. BC 298950, which was filed in Los Angeles Superior Court on July 11, 2003.

10. After administration of the Settlement Agreement has been completed in accordance with the Settlement and all amounts calculated, and in no event later than 180 days after the Effective Date, Defendant shall file a report with this Court setting forth the total of the Gross Settlement Amounts for the Settlement Class Members and certifying compliance with the terms of the Settlement.

11. The Court finds that the Settlement Agreement is in good faith and constitutes a fair, reasonable and adequate compromise of the Released Claims against Defendant.

IT IS SO ORDERED, this 21st day of February, 2007.

_____
The Honorable Kenneth Andreen
Judge of the Superior Court

Exhibit B

- Our ability to improve new store sales and profitability, especially in newer regions and markets.
- Our ability to achieve and maintain targeted levels of productivity and efficiency in our distribution centers.
- Our ability to continue to acquire or lease acceptable new store locations.
- Our ability to identify and to successfully enter new geographic markets.
- Lower than planned gross margin, including higher than planned markdowns, inventory shortage or freight costs.
- Greater than planned operating costs including, among other factors, increases in occupancy costs, advertising costs, and wage and benefit costs, including the impact of changes in labor laws or as a result of class action or other lawsuits relating to wage and hour claims and other labor-related matters.
- Our ability to convert certain former Albertsons real estate sites to the Ross and dd's DISCOUNTS formats in a timely and cost-effective manner and on acceptable terms, and the ability to achieve targeted levels of sales, profits and cash flows from these acquired store locations.

6

## Item 1B. Unresolved Staff Comments

We have received no written comments regarding our periodic or current reports from the staff of the Securities and Exchange Commission that were issued 180 days or more preceding the end of our 2006 fiscal year and that remain unresolved.

## Item 2. Properties

### Stores

From August 1982 to February 3, 2007, we expanded from six Ross locations in California to 771 Ross stores in 27 states and one Ross store in Guam. In addition, we operate 26 dd's DISCOUNTS locations in California. All stores are leased, with the exception of two locations.

During fiscal 2006, we opened 60 new Ross stores, relocated two stores and closed three existing locations. The average new Ross store in fiscal 2006 was approximately 30,000 gross square feet, yielding about 25,000 square feet of selling space. As of February 3, 2007, our 771 Ross stores generally ranged in size from about 25,000 to 35,000 gross square feet and had an average of 29,900 gross square feet and 24,000 selling square feet.

During fiscal 2006, we opened six new dd's DISCOUNTS stores. The average new dd's DISCOUNTS store in fiscal 2006 was approximately 27,000 gross square feet, yielding about 21,600 square feet of selling space. As of February 3, 2007, our 26 dd's DISCOUNTS stores had an average of 27,000 gross square feet and 20,900 selling square feet. All of our dd's DISCOUNTS locations are currently in California.

During fiscal 2006, no one store accounted for more than 1% of our sales.

We carry earthquake insurance to mitigate our risk on our corporate headquarters, distribution centers, buying offices, and all of our stores.

Our real estate strategy in 2007 and 2008 is to open additional stores, mainly in existing regions, to increase our market penetration and to reduce overhead and advertising expenses as a percentage of sales in each market. Important considerations in evaluating a new market are the availability of potential sites, demographic characteristics, competition and population density of the market. In addition, we continue to consider opportunistic real estate acquisitions.

In October 2006, we announced an agreement with Albertsons LLC to acquire certain leasehold rights to 46 former Albertsons sites in California, Florida, Texas, Arizona, Colorado and Oklahoma. We plan to incorporate about 40 of these sites into our 2007 expansion program. This real estate opportunity allowed us to acquire a substantial number of store sites in several of our established, top performing markets.

7

The following table summarizes the locations of our stores by state as of February 3, 2007 and January 28, 2006. California includes 26 and 20 dd's DISCOUNTS locations at February 3, 2007 and January 28, 2006, respectively.

| State/Territory | February 3, 2007 | January 28, 2006 |
|---|---|---|
| Alabama | 11 | 9 |
| Arizona | 38 | 35 |
| California | 223 | 212 |
| Colorado | 25 | 22 |
| Delaware | 1 | - |
| Florida | 87 | 85 |
| Georgia | 40 | 32 |
| Guam | 1 | 1 |
| Hawaii | 11 | 11 |
| Idaho | 8 | 6 |
| Louisiana | 9 | 9 |
| Maryland | 16 | 15 |
| Mississippi | 3 | 3 |
| Montana | 5 | 5 |
| Nevada | 14 | 13 |
| New Jersey | 8 | 8 |
| New Mexico | 5 | 5 |
| North Carolina | 26 | 24 |
| Oklahoma | 13 | 9 |
| Oregon | 21 | 20 |
| Pennsylvania | 22 | 20 |
| South Carolina | 18 | 17 |
| Tennessee | 14 | 12 |
| Texas | 117 | 105 |
| Utah | 9 | 7 |
| Virginia | 23 | 20 |
| Washington | 27 | 27 |
| Wyoming | 2 | 2 |
| Total | 797 | 734 |

Where possible, we have obtained sites in buildings requiring minimal alterations. This has allowed us to establish stores in new locations in a relatively short period of time at reasonable costs in a given market. To date, we have been able to secure leases in suitable locations for our stores. At February 3, 2007, the majority of our Ross stores had unexpired original lease terms ranging from three to ten years with three to four renewal options of five years each. The average unexpired original lease term of our leased stores is six years, or 22 years if renewal options are included. At February 3, 2007, the majority of our dd's DISCOUNTS stores had unexpired original lease terms ranging from eight to ten years with three to four renewal options of five years each. The average unexpired original lease term of our leased stores is nine years, or 28 years if renewal options are included. See Note E of Notes to Consolidated Financial Statements.

See additional discussion under "Stores" in Item 1.

**Distribution Centers**

We operate two 1.3 million square foot distribution centers -- one in Fort Mill, South Carolina, and the other in Perris, California. The South Carolina facility opened in July 2002 and was originally financed under a synthetic lease. We exercised the option to purchase this property in May 2006. The Perris, California, facility opened in September 2003 and is financed with a ten-year synthetic lease facility that expires in July 2013. We also own a 426,000 square foot distribution center located in Carlisle,

Exhibit C



* $100 invested on 1/31/02 in stock or index-including reinvestment of dividends. Fiscal year ending January 31.

| Company / Index | Base Period January 2002 | Indexed Returns for Years Ending | | | | |
|---|---|---|---|---|---|---|
| | | January 2003 | January 2004 | January 2005 | January 2006 | January 2007 |
| ROSS STORES INC | 100 | 108 | 155 | 160 | 165 | 184 |
| S&P 500 INDEX | 100 | 77 | 104 | 110 | 121 | 139 |
| S&P RETAILING GROUP | 100 | 71 | 106 | 124 | 132 | 151 |

12

## Item 6. Selected Financial Data

The following selected financial data is derived from our consolidated financial statements. The data set forth below should be read in conjunction with "Management's Discussion and Analysis of Financial Condition and Results of Operations," the section "Forward-Looking Statements" in the Company's Annual Report on Form 10-K and our consolidated financial statements and notes thereto.

| ($000, except per share data) | 2006[1] | 2005 | 2004 | 2003 | 2002 |
|---|---|---|---|---|---|
| **Operations** | | | | | |
| Sales | $ 5,570,210 | $ 4,944,179 | $ 4,239,990 | $ 3,920,583 | $ 3,531,349 |
| Cost of goods sold[2] | 4,317,527 | 3,852,591 | 3,286,604 | 2,925,454 | 2,636,086 |
| Percent of sales | 77.5% | 77.9% | 77.5% | 74.6% | 74.6% |
| Selling, general and administrative[2] | 863,033 | 766,144 | 657,668 | 621,706 | 566,452 |