BRIAN S. KABATECK, SBN 152054
(bsk@kbklawyers.com)
RICHARD L. KELLNER, SBN 171416
(rlk@kbklawyers.com)
M. MARK YENIKOMSHIAN, SBN 227555
(mmy@kbklawyers.com)
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

KHORRAMI POLLARD & ABIR
SHAWN KHORRAMI, SBN 180411
(skhorrami@khorrami.com)
DYLAN POLLARD, SBN 180306
(dpollard@khorrami.com
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071
Telephone: (213) 596-6000
Facsimile: (213) 596-6010

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TORESSA LOCKETTE, an individual; individually and on Behalf of all other similarly situated current and former employees,<br><br>Plaintiff,<br><br>vs.<br><br>ROSS STORES, INC., a Delaware Corporation; ROSS DRESS FOR LESS, INC., A Virginia Corporation; and DOES 1 through 100,<br><br>Defendants. | CASE NO.: CV 03430 MMC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE**<br><br><u>Hearing</u><br>Date: Sept. 7, 2007<br>Time: 9:00 a.m.<br>Courtroom: 7<br>Before: Hon. Maxine M. Chesney<br><br>Complaint Filed: June 29, 2007<br>Trial Date: None |

1

# TABLE OF AUTHORITIES

2

**Cases**

3

4

*Ashmore .v Northeast Petroleum Division*

5
(1996) 925 F. Sup. 36 ................................................................ 20

*Bisq 'ettes Ceramic Tile, Inc. v. Skinner,*

6

7
2000 WL 33375409, at *6 (N.D. Cal. Sept. 25, 2000) .......... 3

*Bohara v. Backus Hosp. Medical Benefit Plan,*

8

9
390 F. Supp. 2d 957, 963 (C.D. Cal. 2005) .......................... 9

*Bothell v. Phase Metrics, Inc.*

10
(2002) 299 F. 3d. 1120 ............................................................ 10

11

*Bowe Bell + Howell Co. v. IMMCO Employees' Ass'n,*

12
2004 WL 1244143, at *6 (N.D. Ill. June 2, 2004) .............. 14

13

*Decker Coal Co. v. Commonwealth Edison Co.,*

14
805 F.2d 834, 843 (9th Cir. 1986) ...................................... 2,

15

*DeFazio v. Hollister Employee Ownership Trust*

16
406 F. Supp. 2d 1085, 1090 (E.D. Cal. 2005) ...................... 9

17

*Dole Food Co. v. Watts,*

18
303 F.3d 1104, 1118 (9th Cir. 2002) .................................... 4

19

*Dube v. Eagle Global Logistics*

20
102 F. Supp. 2d 612, 616 (E.D. Pa. 2000) ............................ 3

21

*E. & J. Gallo Winery v. F.& P. Sp.A.*

22
(1994) 899 F. Sup. 465 ............................................................ 7

23

*Erie R.R. v. Tompkins*

24
(1938) U.S. 304 ...................................................................... 18

25

**Cont'd**

26

/ / /

27

/ / /

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO TRANSFER VENUE**

*Fannin v. Jones*

   (1956) 229 F. 2d. 368                                                    20

*Gates v. Learjet Corp. v. Jensen*

   (1984) 743 F. 2d.                                                        20

*Gasperini v. Center for Humanities*

   (1996) 518 U.S. 415                                                      17

*Gherebi v. Bush,*

   352 F.3d 1278, 1303 (9th Cir. 2003)                                       3

Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.,

   820 F.Supp. 503, 506 (C.D. Cal. 1992)                                     4

*ML-Lee Acquisition Fund II*, L.P.

   816 F. Supp. 973, 976 (D. Del. 1993)                                      3

*Jones v. GNC Franchising, Inc.,*

   211 F.3d 495, 498 (9th Cir. 2000)                                         2

*Leonard v. Terminix Intl. LP*

   (2002) 854 So. 2d. 854                                                   19

*Lockman Found v. Evangelical Alliance Mission*

   (9th Cir. 1991) 930 F. 2d. 764                                           5

*Los Angeles Memorial Coliseum Commission v. NFL,*

   89 F.R.D. 497, 499 (C.D. Cal. 1981)                                      4

*Lou v. Belzberg,*

   844 F.2d 730, 739 (9th Cir. 1987)                                        6

*Nelson v. City of Irvine*

   (1998) 143 F. 3d.                                                        18

**Cont'd**

/ / /

/ / /

/ / /

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO TRANSFER VENUE**

1   *Palmco v. JSC Techsnaexport*

2       (2006) 448, F. Sup.2d 1194                                        4

3   *Parrish v. National Football Leage Players, Inc.*

4       (N.D. Cal. 2007) WL 1624601                                      7

5   *Piper Aircraft v. Reyno*

6       (1981) 454 U.S. 235                                              4

7   *Pro Spice Inc. v. Omni Trade Group*

8       173 F. Sup. 2d 336                                               3

9   *Royal Queentex Enters. v. Sara Lee Corp.*

10      2000 WL 246599, at *6 (N.D. Cal. Mar. 1, 2000)                  17

11  *Salinas v. O'Reilly Auto Inc.*

12      (2005) 358, F. Sup. 2d. 569                                      6

13  *Stewart Org., Inc. v. Ricoh Corp.,*

14      487 U.S. 22 (1988)                                               2

15  *STX, Inc. v. Trick Stick Inc.*

16      (1998) 708 F. Sup. 1551                                         13

17  *Tiffany v. Hometown Buffet, Inc.,*

18      2006 WL 2792868, at *1-2 (N.D. Cal. Sept. 28, 2006              3

19  *United States v. Brown University*

20      (1991) 772 F. Sup. 241                                          12

21  *Van Dusen v. Barrack*

22      (1964) 376 U.S. 612                                              8

23  *Wang v. Chinese Daily News*

24      (2005) 231 F.R.D. 602                  `                        11

25  **Federal**

26  *U.S.D.C* Section 1404(a)                                            2

27  *U.SD.C.* Section 216(b)                                             3

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. I

TABLE OF AUTHORITIES ........................................................................ III

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.   INTRODUCTION ................................................................................. 1

II.  ROSS MUST SATISFY A HEAVY BURDEN IN ORDER TO JUSTIFY
     TRANSFER TO THE NORTHERN DISTRICT OF ALABAMA ..................... 2

     A.   PLAINTIFF'S CHOICE OF FORUM IS ENTITLED TO
          GREAT DEFERENCE, EVEN IN "COLLECTIVE ACTIONS"
          UNDER THE FLSA ................................................................ 4

     B.   THE CONVENIENCE FACTORS WEIGH AGAINST
          TRANSFERRING THIS CASE TO THE NORTHERN
          DISTRICT OF ALABAMA ........................................................ 7

          1.   Defendant fails to Satisfy Its Burden of Showing that
               Plaintiff's Immediate Supervisors are Material Witnesses ............ 8

          2.   Individualized Testimony of Plaintiff's Immediate Supervisors
               Will Not Be Necessary for Defendant to Defend its Nation-
               Wide Corporate Policy of Categorically Classifying All
               "Assistant Managers" as "Exempt" Employees ............................. 10

          3.   Even If Plaintiff's Immediate Supervisors Were Material
               Witnesses, Ross Fails to Show Hardship Exists, and Cannot
               Make Such a Showing to the Extent that Such Individuals Are
               Employees under the Direct Control of Ross ................................ 12

          4.   Insofar as Material Witnesses Relating to Ross' Challenged
               Nation-wide Policy Are Located In this District, Ross'
               Proposed Transfer at Best Seeks to Shift Inconvenience, Not
               Eliminate It ................................................................................. 14

          5.   Ross Does Not Claim, Let Alone Establish, That Litigating
               this Case in the Present Forum Will Pose Any Obstacle to
               Accessing Evidence ...................................................................... 15

III. THE PUBLIC INTEREST FACTORS DECIDEDLY WEIGH AGAINST
     TRANSFERRING THIS CASE TO THE NORTHERN DISTRICT OF
     ALABAMA ........................................................................................ 16

     A.   IT IS CALIFORNIA, NOT ALABAMA, THAT HAS A
          STRONG INTEREST IN ADJUDICATING ROSS'
          CHALLENGED CORPORATE POLICY .................................... 16

     B.   ALABAMA DISTRICT COURTS ARE NO BETTER SUITED
          TO ADJUDICATING THE ISSUES PERTAINING TO ROSS'
          PURPORTED ARBITRATION AGREEMENT ......................... 17

1

C.    CONTRARY TO ROSS' ASSERTION, TRANSFERRING
THIS CASE BASED ON CONGESTION, WOULD BE
IMPROPER............................................................................ 20

IV.    CONCLUSION.................................................................................. 21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO TRANSFER VENUE**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This collective action arises from the national wage and hour policy of Ross Stores, Inc. and Ross Dress For Less, Inc. (hereinafter, "Ross") that deemed all assistant general managers in its stores as exempt.  Significantly, this national policy emanated from its corporate headquarters located in Pleasanton, California.  On the surface, it appears perplexing that Ross would object to a "collective action" being brought in its home district, and it is further puzzling that Ross would seek to have the case transferred to the Plaintiff's home State.  These questions are further compounded by the fact that this collective action will involve plaintiffs from multiple jurisdictions where the common thread that will join all of the plaintiffs will be the corporate policies that emanated from Ross' corporate headquarters in California.

Ross' true motivation for seeking a transfer of venue appears to be to avoid the possible collateral estoppel consequences of rulings in California State cases that have been litigated in this District.  In a consolidated wage and hour class action entitled *Taylor v. Ross Stores, Inc.*, Superior Court of the State of California, County of San Bernardino (Case No. JCCP 4331), Ross sought to enforce the same form arbitration clause that each plaintiff in this collective action entered.  In that case, the California Superior Court ruled that the matter could go to arbitration, but a class action waiver would be ***unenforceable*** under the law governing the Federal Arbitration Act ("FAA") (Declaration of Richard L. Kellner, ¶2).  Not surprisingly, Ross apparently withdrew its request for arbitration and the matter proceeded in State Court.  Eventually, Ross entered a settlement agreement <u>in which it agreed to the certification of a class of virtually identical employees for a settlement involving only California employees.</u>

Ross evidently wants to get "out" of California, because it fears the potential collateral estoppel effect of not only issues relating to the class action waiver provision in the form arbitration agreement, but also its stipulation (pursuant to the terms of the class action settlement) that the case was one that should be certified as a class action.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO TRANSFER VENUE**

1  [Kellner Decl., ¶3 Exh. "A" (February 21, 2007 Order Granting Final Approval to Class

2  Action Settlement in the Taylor Action)].

3      Under applicable law governing the transfer of venue, Ross cannot sustain its

4  heavy burden of establishing the existence of inconvenience sufficient to upset the

5  plaintiff's choice of forum. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d

6  834, 843 (9th Cir. 1986).  In fact, in view of the fact that this case involves a

7  "nationwide" policy governing exemption, and Ross and its attorneys have already

8  acknowledged that individual issues will not predominate since it agreed to the

9  certification of a comparable class of employees in another action, its claim of

10  inconvenience is nothing more than an attempt to get out of a forum that it apparently

11  does not like.

12      Indeed, most of Ross' arguments appear to be predicated upon its espoused

13  concerns for the inconvenience of Plaintiff and its conjecture that this case will not be

14  decided on a collective action basis.  When all of the applicable factors are considered,

15  Ross' motion to transfer should be denied, in all respects.

16

17  **II.    ROSS MUST SATISFY A HEAVY BURDEN IN ORDER TO JUSTIFY**

18  **TRANSFER TO THE NORTHERN  DISTRICT OF ALABAMA**

19      At the outset, it must be stressed that Ross faces a heavy burden to justify the

20  transfer of this case from the venue that Plaintiff selected, especially since California is

21  the home of Ross' corporate headquarters, as well as being the jurisdiction from which its

22  corporate policies (which form the gravamen of this case) emanated.

23      Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any

24  district where the case could have been filed originally for the convenience of the parties

25  and witnesses and in the interest of justice.  Motions to transfer pursuant to section

26  1404(a) lie within the discretion of the district court and are determined upon notions of

27  convenience and fairness on a case-by-case basis. *Stewart Org., Inc. v. Ricoh Corp.*, 487

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO MOTION TO TRANSFER VENUE**

1  U.S. 22 (1988); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)

2  (motion to transfer decided "according to an 'individualized, case-by-case consideration

3  of convenience and fairness.'").  However, "transfer under § 1404(a) should not be freely

4  granted." *Gherebi v. Bush*, 352 F.3d 1278, 1303 (9th Cir. 2003).

5       The party who requests a transfer has the burden of establishing that the change in

6  venue is warranted. *Tiffany v. Hometown Buffet, Inc.*, 2006 WL 2792868, at *1-2 (N.D.

7  Cal. Sept. 28, 2006).  That burden is a heavy one.  "The defendant must make a strong

8  showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker*

9  *Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  A motion to

10  transfer will not be granted if such a transfer will only shift inconveniences to another

11  litigant, and not eliminate, any inconveniences. *Id.*; *accord Dube v. Eagle Global*

12  *Logistics*, 102 F. Supp. 2d 612, 616 (E.D. Pa. 2000) (class action holding that "it is

13  inappropriate to transfer a case where the transfer would simply shift the burden").

14       Unless the balance is *strongly* in favor of the movant, the plaintiff's choice of

15  forum should rarely be disturbed. *See Pro Spice Inc. v Omni Trade Group*, 173 F. Supp.

16  2d 336, 341 (E.D. Pa. 2001) (emphasis added).  Transfer must be denied if the factors are

17  evenly balanced or weigh only slightly in favor of transfer. *In re ML-Lee Acquisition*

18  *Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993); *Bisq 'ettes Ceramic Tile, Inc. v.*

19  *Skinner*, 2000 WL 33375409, at *6 (N.D. Cal. Sept. 25, 2000) (holding that "[t]he

20  plaintiff's initial choice of forum is entitled to significant weight and transfer should not

21  be ordered unless convenience and justice considerations strongly favor venue

22  elsewhere," and denying transfer even though many witnesses resided in the proposed

23  transferee district.)

24       To meet its burden, it is not sufficient that Ross merely show that the claim arose

25  elsewhere. *See e.g. KCJ Corp.* 18 F. Supp. 2d 1212, 1214 (D. Kan. 1998) (stating that

26  Defendants showing that the claim arose out of actions in Texas was not sufficient to

27  transfer the case from the District of Kansas to the Western District of Texas).  Rather,

28  Ross must also show that the transfer will serve the convenience of the parties and

1  witnesses, and will promote the interest of justice." *Goodyear Tire & Rubber Co. v.*

2  *McDonnell Douglas Corp.*, 820 F.Supp. 503, 506 (C.D. Cal. 1992).  In making this

3  determination, the court analyzes whether the following practical factors support granting

4  the motion to transfer: (1) the plaintiff's choice of forum; (2) the convenience of the

5  parties; (3) the convenience of the witnesses; and (4) the interests of justice.  *See* 28 USC

6  1404(a); *See also Los Angeles Memorial Coliseum Commission v. NFL*, 89 F.R.D. 497,

7  499 (C.D. Cal. 1981), aff'd 726 F.2d 1381 (9th Cir. 1984).

8        Here, as set forth in detail below, Ross has not met its burden.

9

10  **A.  PLAINTIFF'S CHOICE OF FORUM IS ENTITLED TO GREAT**
   **DEFERENCE, EVEN IN "COLLECTIVE ACTIONS" UNDER**

11  **THE FLSA**

12        Ross' tacit disregard of the Plaintiff's choice of forum in this case is not consonant

13  with the Ninth Circuit law, and the law pertaining to FLSA "collective actions" brought

14  under the 29 U.S.C. Section 216(b).

15        As a general rule, a plaintiff's choice of forum is to be accorded great deference.

16  *See Palmco Corp. v. JSC Techsnabexport*, 448 F.Supp.2d 1194, 1198 (C.D. Cal. 2006),

17  *citing Piper Aircraft v. Reyno*, 454 U.S. 235, 244 (1981).  The Ninth Circuit has

18  repeatedly acknowledged that a plaintiff's choice of forum should be disturbed rarely,

19  and only when "defendants have made a clear showing of facts which ... establish such

20  oppression and vexation of a defendant as to be out of proportion to plaintiff's

21  convenience." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002); *Securities*

22  *Investor Protector Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) (holding that

23  "[w]ithout question, the intent of the venue and jurisdiction provisions  . . . is to grant

24  potential plaintiffs liberal choice in their selection of a forum, and unless the balance of

25  factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely

26  be disturbed.").  Thus, only in those situations where public and private factors weigh

27  strongly in favor of transfer is a court justified in overriding a plaintiff's choice of venue.

28

1   *See Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991).

2   That situation does *not* exist here.

3        The deference given to a plaintiff's choice of forum is founded on the fundamental

4   policy that a plaintiff is the master of its own complaint and that its choice of forum, like

5   the particulars of its pleadings, should be treated with liberality.  Thus, even in those

6   situations where the plaintiff has not chosen its "'home turf or a forum where the alleged

7   wrongful activity occurred, the plaintiff's choice of forum is still of paramount

8   consideration, and the burden remains at all times on the defendants to show that the

9   balance of convenience and the interests of justice weigh strongly in favor of transfer." *In*

10  *re ML-Lee Acquisition Fund II, L.P.*, 816 F.Supp. 973, 976 (D.Del. 1993).

11       Ross' argument of inconvenience has little credibility since Plaintiff has

12  commenced this action in that the District where Ross maintains its principle corporate

13  offices.  Ross tries to avoid this fact by arguing that of the "Plaintiff's choice" of forum is

14  completely irrelevant in a collective action.  Ross, however, completely misses the point:

15  this District is an entirely appropriate venue for this nation-wide collective action because

16  the common thread of this case – the corporate policy emanating from its corporate

17  headquarter – pertains to conduct that emanated from this District.  Moreover, Ross'

18  argument that the Plaintiff's choice of forum should be deemed inconsequential because

19  Plaintiff seeks to represent a class is entirely incorrect.

20       First, because a uniform corporate "classification" policy is at the heart of the

21  instant collective action [*See Dec. of Jeffery Cook*, at ¶5 (attesting that all assistant

22  manager employees are classified as "exempt" – with the sole exception of assistant

23  managers in California who were reclassified as non-exempt on April 1, 2007)], Ross'

24  argument that Alabama is the superior venue to litigate a collective action is without any

25  colorable basis.  Insofar as Ross' classification policy will potentially involve claims by

26  assistant managers in approximately 26 different States [Complaint, at¶7, Kellner Decl.,

27  ¶4 Exh. "B" (Ross SEC form 10-K filing reflecting that Ross maintains stores in 27

28  States)], litigating the instant action will not turn on Plaintiff Lockette's particular facts,

1    but rather, turn on representative proof from various plaintiff's who work in various

2    states. *See e.g. Clark v. Dollar Gen. Corp.*, 2001 U.S. Dist. LEXIS 25975, 7-8 (D. Tenn.

3    2001) (rejecting an identical argument by employer, in part, because an "action under

4    section 216(b) of the Fair Labor Standards Act, ... ultimately will involve representative

5    proof from plaintiffs who live and work in various states, making Alabama no more

6    convenient than Plaintiffs' chosen forum....").

7        Second, Ross incorrectly relies on "class action" authority concluding that the

8    strength of a plaintiff's choice of venue should be given less preference. Courts have

9    held that any reduced consideration of the plaintiff's forum selection preference is

10   *inapplicable* in the context of FLSA "collective actions" brought pursuant to section

11   216(b) because persons must individually opt-in to a collective action:

12       "FLSA collection actions, as opposed to Rule 23 class actions, 'no person
13       can become a party plaintiff and no person will be bound by or may benefit
         from judgment unless he has affirmatively opted into' the class; that is,
14       giving his written, filed consent.' []In analyzing a motion to transfer venue
         under § 1404(a), the Eastern District of Louisiana held that 'the opt-in'
15       structure of collective actions . . . strongly suggests that Congress intended
16       to give plaintiffs considerable control over the bringing of an FLSA action.'"

17   *See Salinas v. O'Reilly Auto., Inc.*, 358 F. Supp. 2d 569, 571 (D. Tex. 2005).

18       However, even if Ross' "class action" analogy applies to the instant case – ***which
19   is does not*** – Ross' assertion that Plaintiff's choice of forum should be given "little or no

20   weight" is not supported by the law applied in the Ninth Circuit. The Ninth Circuit has

21   made it clear that while a plaintiff's choice of forum is entitled to "less weight" in the

22   context of a class action, it is still entitled to some deference. *Lou v. Belzberg*, 844 F.2d

23   730, 739 (9th Cir. 1987). The very argument raised by Ross here – a plaintiffs' choice of

24   forum is entitled to little deference in a class action – was raised by the defendant in

25   *Gintz v. Jack In The Box, Inc.*, 2007 WL 397306 (N.D. Cal. Feb. 1, 2007). The court

26   flatly rejected the argument, stating:

27       As noted above, the weight to be given to a plaintiff's choice of
28       forum in a class action is diminished. [Citation.] However, a

— 6 —

1
2
3
4

> plaintiff's choice of forum is ***still entitled to some deference***. The Ninth Circuit instructs that the amount of deference is determined by the parties' contact with the forum: "If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter," the plaintiff's choice of forum is entitled only minimal consideration.

5  *Id.* at *2 (emphasis added).

6    Moreover, insofar as this collective action has yet to be certified, Ross' class action

7  analogy has no bearing to this case whatsoever.  In *Parrish v. National Football League*

8  *Players Inc.*, 2007 WL 1624601 (N.D. Cal. June 4, 2007), the Court rejected the

9  argument that deference to the plaintiff's choice of forum in an uncertified class action

10  should be minimized:

11
12
13
14
15
16

> "No class has yet been certified in this action.  If the class is certified, and [plaintiffs] are certified as class representatives, they will still bear a great deal of responsibility in representing the class.  In contrast, the thousands of other putative class members will not need to appear in this action.  Some of them may decide to intervene at some point, however, that has not yet happened.  ***It remains that plaintiffs chose to bring this action in this forum, so plaintiffs' choice of forum still deserves deference, and this factor weighs against transfer.***"
> *Id..* at *6 (emphasis added).

17    Thus, Plaintiff's choice of venue is a relevant factor to be considered in

18  determining Ross' transfer of venue motion.

19

20
21

**B.**  **THE CONVENIENCE FACTORS WEIGH AGAINST TRANSFERRING THIS CASE TO THE NORTHERN DISTRICT OF ALABAMA**

22    As noted above, in determining whether transfer is warranted, three convenience

23  factors – convenience of the parties, convenience of the witnesses, and interest of justice

24  – are entrusted to the "inherent discretion" of the court and are interpreted broadly to

25  allow the court to consider the particular facts of each case.  *E. & J. Gallo Winery v. F. &*

26  *P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994).

27    The three convenience factors involve a number of relevant considerations:

28  "convenience of witnesses, judicial economy, relative ease of access to proof, and

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO TRANSFER VENUE**

1  availability of compulsory process." *Id.  A motion to transfer may not be granted if it*
2  *simply shifts the inconvenience from one party to another. Van Dusen v. Barrack*, 376
3  U.S. 612, 646 (1964) (Section 1404(a) provides for transfer to a more convenient forum,
4  not an equally convenient or inconvenient forum).  Ross has failed to carry its burden,
5  failing to show that, standing alone, the "convenience" factors favor venue in the
6  Northern District of Alabama.

7         Ross stakes its claim of inconvenience of the fact that Plaintiff's immediate
8  supervisors are located within the Northern District of Alabama, and that it would be
9  difficult to compel their employees' attendance to testify at trial if this case is litigated in
10  the present forum.  Yet, contrary to the Ross' argument, such supervisors are not material
11  witnesses in this case, given that Ross employed a nation-wide, uniform policy and
12  practice of categorically classifying all "assistant managers" as "exempt" employees – a
13  cases-by-case analysis basis upon individualized proof will not likely be conducted in this
14  collective action.  Indeed, the same reasons that facilitated a certification of the class in
15  the California wage-hour case (albeit by stipulation), effectively negate the need for a
16  case-by-case analysis of each assistant manager's work in this collective action.

17         However, even if Plaintiff's immediate supervisors were material witnesses, Ross
18  cannot establish inconvenience due to the fact such individuals are employees under the
19  direct control of Ross.  Further, even if some of these Ross employees had to testify in
20  California, Ross ignores the fact that a large number of the truly critical witnesses (such
21  as the Ross corporate officials who prepared and disseminated its corporate policies) are
22  in California.  Finally, even if witnesses from the local Ross stores must testify, Ross
23  ignores the fact that if the national collective action were brought in Alabama, witnesses
24  from other States would have to fly to Alabama.  Accordingly, this argument by Ross is
25  without merit.
26  / / /
27  / / /
28  / / /

1. <u>Defendant fails to Satisfy Its Burden of Showing that Plaintiff's Immediate Supervisors are Material Witnesses</u>

In assessing the convenience of witnesses, "courts consider the effect of a transfer on the availability of certain witnesses and their ***live testimony at trial***." *DeFazio v. Hollister Employee Ownership Trust*, 406 F. Supp. 2d 1085, 1090 (E.D. Cal. 2005) (emphasis added).  Where "transfer is for the convenience of witnesses, defendant must name the witnesses ***it wishes to call*** [at trial], the anticipated areas of their testimony and its relevance, and the reasons why the present forum would present a hardship to them." *Bohara v. Backus Hosp. Medical Benefit Plan*, 390 F. Supp. 2d 957, 963 (C.D. Cal. 2005) (emphasis added).  "In order to show that a proposed witness could offer material evidence, the proffering party must set forth the 'substance of the evidence that each [witness] will give.'" *See Flotsam of Cal., Inc. v. Huntington Beach Conf. & Visitors Bureau*, 2007 U.S. Dist. LEXIS 31762, * 12 (N.D. Cal. 2007).  Generalized statements of possible testimony are not sufficient to meet this burden.  *See id.* at 12-13.

Here, Ross' bald claim that Plaintiff Lockette's immediate supervisors will be material witnesses in this action fails to meet the applicable standards detailed above. Not only does Ross fail to explain the specific legal basis upon which such witnesses may be deemed relevant, Ross also fails to set forth the specific substance of the testimony that any of these witness will provide. (*Motion to Transfer Venue*, at 6:2-14).  In fact, Ross does not even affirmatively state that any of these individuals have specific knowledge of any information pertaining to Plaintiff Lockette, but rather, that such individuals are only "likely" to have such knowledge.  *See Declaration of Jeffery Cook*, at ¶ 11.  Based on these facts, Ross has failed to carry its burden as to convenience.  *See e.g. Flotsam of Cal., Inc. v. Huntington Beach Conf. & Visitors Bureau*, 2007 U.S. Dist. LEXIS 31762, 12-13 (N.D. Cal. 2007) ("Defendant does not, however, explain why the testimony of such witnesses is material to any issue in dispute herein, and, standing alone, the description provided does not support an inference as to the materiality of such testimony.")

2.   <u>Individualized Testimony of Plaintiff's Immediate Supervisors Will Not Be Necessary for Defendant to Defend its Nation-Wide Corporate Policy of Categorically Classifying All "Assistant Managers" as "Exempt" Employees</u>

As Ross admits that it classified all "assistant managers" as "exempt" from the FLSA based on a uniform, categorical nationwide corporate policy, Ross' bald claim that Plaintiff's immediate supervisors are now necessary witnesses to defend its application of that policy to Plaintiff lacks credibility.  Indeed, the very premise of Ross' argument ignores the fact that Ross had a duty to justify its policy in the first instance,[1] and undermines the very concept of a "collective action" in trying common claims based on an overarching corporate policy.

Here, Ross admits through the supporting declaration of *Jeffery Cook* that it has categorically classified all "assistant managers" in all Ross stores throughout the United States as "exempt" from overtime under the FLSA, limited only by its categorical re-classification of assistant managers in California to non-exempt in April 1, 2007. *See Dec. of Jeffery Cook*, at ¶5 (attesting that "Assistant managers outside California before April 1, 2007, were, and since that time remain, classified as exempt from overtime under the Fair Labor Standards Act.").  Ross admits that it changed its categorical policy as to California assistant managers pursuant to a class action settlement after being sued on its classification policy in California State court. *See Motion to Change Venue*, at 6:15-20.

---

[1] Material to the instant case, Ross has at all times borne a duty to ensure that all employees it classified as "exempt" in fact met the stringent standards necessary to qualify for that exemption.  "An 'employer who claims an exemption from the FLSA has the burden of showing that the exemption applies.'" *See Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002); <u>Corning Glass Works v. Brennan</u>, 417 U.S. 188, 196-197 (1974).  Moreover, Ross' duty was to ensure that each individual was in fact exempt under the rigorous standards of the FLSA.  *See Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124-1125 (9th Cir. 2002) ("Because the FLSA 'is to be liberally construed to apply to the furthest reaches consistent with Congressional direction ... FLSA exemptions are to be narrowly construed against ... employers and are to be withheld ***except as to persons <u>plainly</u> and <u>unmistakenly</u> within their terms and spirit***.'").

1   Based on Ross' concession that it applies an across-the-board policy and practice

2   of classifying "assistant managers" as "exempt," rather than making such a determination

3   individually on a case-by-case basis, Ross cannot now claim that individualized inquiry

4   of each employee's immediate supervisors is necessary to determine whether the

5   exemption applies.  Indeed, it would be nonsensical for Ross to categorically apply

6   exempt status as a matter of policy in the ordinary course of business, but claim that the

7   Court must undertake a particularized inquiry to determine whether each individual is

8   exempt now that its policy is challenged in court.  *See e.g. Wang v. Chinese Daily News,*

9   *Inc.*, 231 F.R.D. 602, 613 (C.D. Cal. 2005) ("Defendant cannot, on the one hand, argue

10  that all reporters and account executives are exempt from overtime wages and, on the

11  other hand, argue that the Court must inquire into the job duties of each reporter and

12  account executive in order to determine whether that individual is 'exempt.'"); *Tierno v.*

13  *Rite Aid Corp.*, 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. 2006) ("Rite-Aid's contention

14  that each Store Manager position must now be individually assessed to determine

15  whether the position can be categorized as exempt or non-exempt rings hollow.")

16  Nonetheless, insofar as Ross had a duty to justify the exemption in the first

17  instance, it may utilize the evidence it relied upon to justify its corporate policy in the

18  ordinary course of its business to defend itself in this action.

19  Moreover, Ross cannot now claim that certification of a collective action is

20  unlikely in this action, as Ross has submitted declaration in support of this motion in

21  which it acknowledged that all assistant managers are categorically classified as exempt.

22  This is evidence, in and of itself, will be sufficient to certify a collective action under

23  applicable law.  *See e.g.* Piper v. RGIS Inventory Specialists, Inc., 2007 U.S. Dist. LEXIS

24  44486, 13-14 (N.D. Cal. 2007) (acknowledging that in determining "whether a collective

25  action should be certified for the purpose of sending notice to potential class members ...,

26  the standard is lenient, requiring 'little more than substantial allegations, supported by

27  declarations or discovery, that 'the putative class members were together victims of a

28  single decision, policy, or plan.'").  Indeed, Ross' credibility in this regard is severely

1  undermined by the fact that it agreed to class certification of a comparable class of
2  employees in a recent California settlement – under the heavier standard applicable to
3  class actions.  (Kellner Decl., ¶3.)  The certifiability of a class is not something that can
4  be cavalierly conceded in one case where a party agrees to settlement, and denied in
5  another.

6  Based on the foregoing, Ross' argument that Plaintiff's immediate supervisors are
7  necessary to this action is simply not credible, since Ross did not maintain a policy of
8  classifying "assistant managers" as "exempt" on a case-by-case basis in the ordinary
9  course of its business.  Accordingly, this justification does not favor transfer.

> 3.    Even If Plaintiff's Immediate Supervisors Were Material
>        Witnesses, Ross Fails to Show Hardship Exists, and Cannot Make
>        Such a Showing to the Extent that Such Individuals Are Employees
>        under the Direct Control of Ross

14  Ross' argument that the convenience of witnesses supports transfer is without
15  merit.  Ross fails to demonstrate that any witness will be inconvenienced by litigating this
16  case in the instant forum.

17  To meet its burden in showing hardship, "the movant 'must show that the
18  witnesses will not attend or will be severely inconvenienced if the case proceeds in the
19  forum district.'"  *See Clark v. Dollar Gen. Corp.*, 2001 U.S. Dist. LEXIS 25975, *9 (D.
20  Tenn. 2001) (holding that employer failed to meet its burden as "Defendant has not
21  provided the Court with any documentation supporting its allegation that certain vital
22  witnesses will refuse to testify if this matter is tried in Tennessee").

23  More to the point here, however, the location of the witness "does not warrant
24  transfer when witnesses are employees of a party and their presence can be obtained by
25  that party." *United States v. Brown Univ.*, 772 F. Supp. 241, 243 (E.D. Pa. 1991); *Applied*
26  *Elastomerics Inc v. Z-Man Fishing Prods, Inc.,* 2006 WL 2868971 at 4 ("discount[ing]
27  any inconvenience of the parties' other employees, whom the parties can compel to

1 testify"); *STX Inc. v. Trick Stick, Inc.* 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) (finding

2 defendant's claim that defense witnesses could not be expected to appear at trial must be

3 discounted since four of the six witnesses were defendant's employees who could be

4 compelled to testify).  In addition, when witnesses are employees of the defendant

5 corporation, their appearance at trial on behalf of the party seeking transfer must be

6 assumed. *Bowe Bell + Howell Co. v. IMMCO Employees' Ass'n*, 2004 WL 1244143, at

7 *6 (N.D. Ill. June 2, 2004) ("it is usually assumed that witnesses within the control of the

8 parties will appear voluntarily."); *see also Applied Elastomerics*, 2006 WL 2868971, at

9 *4 ("discount[ing] any inconvenience to the parties' other employees, whom the parties

10 can compel to testify").

11     Further, any supposed inconvenience to the witnesses may be discounted since, as

12 the court noted in *Landen Financial Services, Inc. and Toshiba America Medical*

13 *Systems, Inc. v. DeSotoy Diagnostic Imaging and Zobar Properties,* LLC, "witness

14 testimony could be admitted through videotaped depositions or through reading the

15 transcripts from their depositions." 2002 U.S. Dist. LEXIS 24744 at 16.

16     Here, even if it were assumed Ross could defend its categorical classification

17 policy by way of individualized proof for each and every assistant manager – which as

18 set forth above, it cannot – Ross has failed to demonstrate that any of Lockette's

19 immediate supervisors are unwilling to appear without a subpoena.  Even if it had made

20 such a showing, however, Ross cannot claim that a subpoena is necessary insofar as all

21 the named non-party witnesses are in fact employees of Ross.  *See Dec. of Jeffery Cook*,

22 at ¶¶ 6-9.  To this end, Ross' bald claim of hardship is without any basis whatsoever.

23     Thus, based on these additional grounds, Ross has also failed to meet its burden of

24 demonstrating how hardship would be imposed by litigating the instant case in the

25 present forum.

26

27

28

4.   <u>Insofar as Material Witnesses Relating to Ross' Challenged
Nation-wide Policy Are Located In this District, Ross' Proposed
Transfer at Best Seeks to Shift Inconvenience, Not Eliminate It</u>

Notwithstanding all of the foregoing grounds for denial of Ross' motion to transfer venue, Ross cannot meet its burden insofar as its proposed transfer does not resolve the problem, but rather, reallocates burdens.  As previously stated, the venue transfer provisions of 1404(a) are not meant to transfer inconveniences, and motions to do so have been properly denied.  *Decker Coal*, supra, 805 F.2d at 843; *DirectTV, Inc. v. EQ Stuf, Inc.* 207 F. Supp. 2d 1077, 1083 (C.D. Cal. 2002).

Here, even if it were assumed Ross could defend its categorical classification policy by way of individualized proof for each and every assistant manager, and even if Ross had met its burden demonstrating hardship as to Plaintiff Lockette's immediate supervisors, Ross' proposal simply does not resolve the purported hardship alleged. Insofar as Ross classified assistant managers as "exempt" categorically (rather than on a cases-by-case basis upon individualized proof), witnesses having first hand knowledge of Ross' classification policy are presumably in the Northern District of California where Ross maintains its corporate offices.   Thus, Ross' purported solution of transferring this case to Alabama does not resolve the alleged convenience issue, but rather, seeks only to reallocate the burden of travel among witness.

This notwithstanding, the fact that Ross' witnesses may have to travel to California is not a sufficient basis for granting the motion.  In fact, the Court recently held that the need for occasional travel by air did not constitute the type of inconvenience that would warrant disturbing the plaintiff's choice of forum. *See Flotsam of California, Inc. v. Huntington Beach Conference and Visitors*, 2007 U.S. Dist. LEXIS 31762, *8 (N.D. Cal. 2007) (relying on a Second Circuit holding that forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel).

Thus, based on these additional grounds, Ross has failed to meet its burden of demonstrating how hardship would be imposed by litigating the instant case in the present forum.

> 5. <u>Ross Does Not Claim, Let Alone Establish, That Litigating this Case in the Present Forum Will Pose Any Obstacle to Accessing Evidence</u>

Lastly, many of the documents necessary for this action, including those utilized by Ross to formulate its categorical exemption policy, are presumably located at Ross' corporate headquarters here in Northern California. This is demonstrated by the *Declaration of Jeffery Cook* filed in support of Ross' instant Motion, who attests that he, in his position as a Ross Corporate Paralegal, has access to personnel files, corporate policies and employee manuals, and Ross' "Human Resources Information System" from Ross' corporate headquarters in Pleasanton, California. *Dec. of Jeffery Cook*, at ¶1.

Of course, all other relevant documents could be transported to California with ease. Ross has made no valid argument regarding its inability to have these documents inexpensively or conveniently transferred. *See Bohara v. Backus Memorial Hosp. Med Benefit Plan,* 390 F. Supp. 2d 957, 963 (C.D. Cal. 2005) ("Similarly, if the motion is based on the location of records and documents, the movant must show particularly the location difficulty of transportation, and importance of such records.").

Moreover, Ross Stores, Inc., itself, will suffer no financial hardship by having this action remain here. Ross has an annual revenue of approximately $5.6 billion, whereby continuing this action in California would not pose any monetary setbacks. *See* Kellner Decl., ¶5 Exh. "C" (Ross Form 10-K filing). This provides an additional basis for not transferring this action. *See DeFazio*, *supra*, 406 F. Supp. 2d at 1090 ("There is no indication that defendants suffer from financial constraints in defending this action."); *R. Griggs Group Ltd. v. Consolidated Shoe, Inc.*, 1999 WL 226211, at *5 (N.D. Cal. Apr. 9, 1999) (denying defendant' motion to transfer notwithstanding that "many of their documents and witnesses are located in Virginia" because defendants were "a large

— 15 —

1  company with substantial resources" that would not suffer hardship); R*oyal Queentex*

2  *Enters. v. Sara Lee Corp.*, 2000 WL 246599, at *6 (N.D. Cal. Mar. 1, 2000) (large

3  company would suffer less financial hardship if transfer motion was denied than would

4  plaintiff if motion was granted).

5      Additionally, as both parties have counsel located in California, it would be

6  inconvenient for both parties to have this action transferred to Alabama.  The parties

7  would either need to retain new counsel or the costs of transporting the parties' current

8  counsel would be greatly increased. *See Los Angeles Memorial Coliseum v. NFL, supra,*

9  89 F.R.D. at 501.

10

11  **III.   THE PUBLIC INTEREST FACTORS DECIDEDLY WEIGH AGAINST**

12  **TRANSFERRING THIS CASE TO THE NORTHERN DISTRICT OF**
    **ALABAMA**

13      As previously stated, "[t]he determination of 'convenience' turns on a number of

14  private and **public factors,** none of which are given dispositive weight." *See In re*

15  *Volkswagen of America, Inc.*, 371 F.3d 201, 203 (5th Cir. 2004).  In its motion papers,

16  Ross advances two "public" reasons why the interests of justice would purportedly be

17  furthered by a transfer to Alabama: (1) Alabama has a "local interest" in having this

18  matter litigated there, and (2) the Northern District of Alabama is less congested than this

19  Court.  Again, Ross' arguments are without merit.

20

21      **A.   IT IS CALIFORNIA, NOT ALABAMA, THAT HAS A STRONG**
         **INTEREST IN ADJUDICATING ROSS' CHALLENGED**

22         **CORPORATE POLICY**

23      Ross' assertion that Alabama holds the strongest interest in adjudicating the instant

24  action is based on the false premise that the issues and evidence in this action will revolve

25  around only the named Plaintiff.   Not only does this argument disregard the fact that this

26  action arises out of Ross' corporate policy of misclassifying its "assistant managers as

27  exempt" – a policy which emanate from Ross' corporate headquarters located in this

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO MOTION TO TRANSFER VENUE**

1    judicial district – Ross fails to make note that this is a collective action may ultimately

2    include opt-in Plaintiffs from 25 other States.

3        Since potential plaintiffs in this case likely will come from multiple States,

4    Alabama necessarily holds no greater interest in this litigation than any other State that

5    potential plaintiff's may reside.   In *Clark v. Dollar Gen. Corp.*, 2001 U.S. Dist. LEXIS

6    25975, *8 (D. Tenn. 2001), the Court upheld the plaintiff's choice of forum in the State

7    of Ross' corporate headquarters on such grounds despite the fact the plaintiff actually

8    worked in another State.  *See id.* at 8 ("because Plaintiffs brought this action under

9    section 216(b) of the Fair Labor Standards Act, presumably their case ultimately will

10   involve representative proof from plaintiffs who live and work in various states, making

11   Alabama no more convenient than Plaintiffs' chosen forum, Tennessee.").

12       Moreover, Alabama's interest in adjudicating this collective action is weak insofar

13   as only 11 of Defendants' 797 stores are located within that State.  *See* [Kellner Decl., ¶4

14   Exh. "B" (Ross Form 10-K filing).  Conversely, even if assistant managers in Ross' 223

15   California stores were not a part of this action, California nonetheless has a strong

16   interest in this case insofar as the remaining 574 stores throughout the country that

17   continue to operate under Ross' categorical "exempt" classification policy – the core

18   issue in this litigation – derives from Ross' corporate headquarters located in this State.

19       As Plaintiff selected California as the forum notwithstanding the fact that she

20   resides in another district, it is apparent she is willing to travel as need to appear before

21   this Court.  Additionally, Ross cannot argue that it is a stranger to this Court, as Ross'

22   headquarters are in Northern California and they regularly conduct business in this

23   Jurisdiction.

24

25    **B.**     **ALABAMA DISTRICT COURTS ARE NO BETTER SUITED TO**
           **ADJUDICATING THE ISSUES PERTAINING TO ROSS'**

26            **PURPORTED ARBITRATION AGREEMENT**

27        For numerous reasons, Ross' argument regarding potential arbitration issues does

28   not provide any basis to deem a California venue inconvenient.

As an initial point, Ross' argument that an Alabama Court must adjudicate the enforceability of an arbitration agreement pertaining to Plaintiff Lockette is nonsensical, as such a proposition runs contrary to the very point of *Erie*. In diversity cases, federal courts must apply federal law, and where it applies, State substantive law. *See e.g. Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (U.S. 1996) *citing Erie R.R. v. Tompkins*, 304 U.S. 64 (U.S. 1938). The essence of that ruling goes towards federal courts adjudicating claims of non-resident parties, rather than sending the claim to the resident state court. While principles of *Erie* may require a federal court to follow the ruling of the highest court of each State, or if the highest court has not yet rendered an opinion, predict how each highest state court would rule to resolve the state law issue [*Nelson v. City of Irvine,* 143 F. 3d 1196, 1206-1207 (9th Cir. 1998)], this does not translate into the notion that this Federal Court is not competent to adjudicate such issues.

This notwithstanding, Ross' proposal that this case be transferred to the Northern District of Alabama would not even resolve the *Erie* issue. The Alabama Federal Court would still have to engage in the same *Erie* analysis in the application of the State's substantive law.

Moreover, Ross' criticism that arbitration clauses of potential collective action class members would have to be adjudicated pursuant to each State's contract law is irrelevant to this motion, not only because such a circumstance would theoretically occur in **any** venue that this case is litigated, but also because Lockette is currently the only plaintiff before this Court.[2] ***Indeed, Ross' argument also presupposes that Ross will seek to compel arbitration, even if it is decided by a court that the class action waiver***

---

[2] Significantly, if Ross' argument regarding the burdens posed by adjudicating multi-state arbitration agreements were accepted on its face, an employer could effectively nullify the collective action provisions of Section 216(b) by simply employing the use of an arbitration agreement. If classwide proceedings could be automatically eliminated in such a fashion, the resulting unfairness would be substantial. *See e.g. Keating v. Superior Court,* 31 Cal. 3d 584, 609 , *overruled on other grounds in Southland Corp. v. Keating*, 465 U.S. 1 (1984), (holding that there is an inherent unfairness in forcing hundreds of potential Plaintiff's asserting the same claim, arising out of a common policy, to litigate their claims in separate proceedings against a party with vastly superior resources.).

1  *provision is inapplicable.*  **Indeed, after such a ruling was made by the California**

2  **court, Ross elected to proceed in State court and not arbitration.**  (Kellner Decl., ¶2.)

3       Ironically, Alabama State law applies the same unconscionability analysis applied

4  under California law, and similarly has held that arbitration clauses that defeat the

5  prospect of class-action treatment, giving the defendant immunity, are unconscionable.

6  *See Leonard v. Terminix Int'l Co., L.P.*, 854 So.2d 529, 536-539 (Ala., 2002) (holding

7  that "[t]his arbitration agreement is unconscionable because it is a contract of adhesion

8  that restricts the Leonards to a forum where the expense of pursuing their claim far

9  exceeds the amount in controversy" and that "[t]he arbitration agreement achieves this

10  result by foreclosing the Leonards from an attempt to seek practical redress through a

11  class action and restricting them to a disproportionately expensive individual

12  arbitration.").[3]

13       Thus, since California law is materially identical to Alabama on this issue,[4] this

14  Court will have no difficulty in adjudicating the enforceability of Ross' arbitration

15  agreement in this case if and when Ross seeks to enforce that purported agreement.

16       Finally, Ross cannot demonstrate that conducting arbitration in this judicial district

17  is inconvenient, let alone that arbitration in Alabama would resolve any convenience

18  issues.  In fact, the location of Ross' corporate headquarters would seem to be the most

19  convenient location to arbitrate the claims asserted because the overarching issue in this

20  litigation would be Ross' corporate policy and practice of categorically classifying

21  assistant managers as exempt.  Moreover, California would seem to be fully acceptable to

22

23  [3] In *Leonard,* homeowners argued that their contracts with a termite company, were unconscionable in that they were contracts of adhesion, including arbitration provisions that precluded class actions. The Court held agreed, indicating that if these contracts prevailed, class actions would be eliminated and the plaintiffs would be left with no legal remedy. *Id.* "[Under the guise of requiring arbitration, the company] was actually rewriting substantially the legal landscape on which its customers must contend." *Id.* at 537. The Court concluded that the company had tried to shield itself from liability and that is "illegal and unconscionable." *Id.*

26  [4] In Fact, the California Supreme Court relied upon *Leaonard* in *Discover Bank v. Superior Court,* 36 Cal. 4th 148, 161 (Cal. 2005) *citing Leonard v. Terminex Intern. Co. L.P.* 854 So. 2d 529, 538 (Ala. 2002).

28

1  Ross because Ross requires that any and all demands for arbitration be made to Ross'

2  General Counsel in Pleasanton, California. *See Declaration of Jeffery Cook*, Exh. "A" at

3  ¶4. This later fact is a tacit admission that Ross maintains centralized control from its

4  California headquarters over all arbitrations.

5      In light of the foregoing, that potential arbitration issues may arise in this case does

6  not provide a basis to deem the present California venue inconvenient.

7
8  **C.    CONTRARY TO ROSS' ASSERTION, TRANSFERRING THIS CASE BASED ON CONGESTION, WOULD BE IMPROPER**

9      Ross' argument that the Northern District off Alabama is less congested is not a

10  basis to transfer this case. "The forum non conveniens doctrine should not be used as a

11  solution to court congestion…." *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337

12  (9th Cir. 1984) (stating that "other remedies, such as placing reasonable limitations on the

13  amount of time each side may have to present evidence, are more appropriate."). To this

14  end, "[t]he real issue is not whether a dismissal will reduce a court's congestion but

15  whether a trial may be speedier in another court because of its less crowded docket." *See*

16  *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) (reasoning that "[t]he

17  district court here observed only that its docket was congested; it did not determine

18  whether a trial would be speedier in the Philippines."); *Fannin v. Jones*, 229 F.2d 368,

19  369 (6th Cir. 1956) ("A court should not under § 1404(a) look to docket conditions in

20  order simply to serve the court's own convenience").

21      Here, Ross does not make any attempt to demonstrate that a speedier trial may be

22  had in the Northern District of Alabama. Rather, the entirety of Ross' argument

23  concerning transfer rests solely on the relative congestion of this judicial District and the

24  Northern District of Alabama. (*Motion to Transfer Venue*, at 9: 24-28). However, Ross'

25  citation to relative docket statistics alone fails to demonstrate anything. *See e.g. Clark,*

26  *supra*, 2001 U.S. Dist. LEXIS 25975 at 12 (concluding that comparative docket statistics,

27  with nothing more, were not an accurate indicator of trial delay for various reasons,

28

including the fact that "the filing or resolution of large multi-district litigation cases in a district … can quickly inflate or deflate the Court's work load statistics.")

However, even if Ross had demonstrated that a speedier trial could be had in the Northern District of Alabama – which it did not – this element standing alone cannot justify transfer.  *See Ashmore v. Northeast Petroleum Div.*, 925 F. Supp. 36, 39 (D. Me. 1996) ("A prompt trial is not without relevance to the convenience of parties and witnesses and the interest of justice."), *citing Fannin v. Jones*, 229 F.2d 368, 369 (6th Cir. 1956).

Based on the foregoing, Ross' congestion argument does not in any way weigh in favor of transfer, let alone provide a basis to deem the present California venue inconvenient.

## IV.    CONCLUSION

Consideration of the relevant factors makes it clear that Ross has failed to meet its heavy burden of demonstrating that transfer to the Northern District of Alabama is warranted under 28 U.S.C. § 1404(a).  Accordingly, Ross' motion to transfer venue should be denied in its entirety.

Dated: August 17, 2007

By:    _____
RICHARD L. KELLNER
KABATECK BROWN KELLNER LLP
*Counsel for Plaintiff*

KHORRAMI POLLARD & ABIR
SHAWN KHORRAMI
DYLAN POLLARD
*Counsel for Plaintiff*

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO TRANSFER VENUE**